UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| ANNAVIL SIROY, | Civ. No. 2:16-cv-04523-CLW |
|---|---|
| Plaintiff, | **OPINION & ORDER** |
| v. | |
| JOBSON HEALTHCARE INFORMATION LLC and JEFF LEVITZ, | |
| Defendants. | |

**CATHY L. WALDOR, U.S.M.J.:**

        Before the Court is the motion of Defendants Jobson Healthcare Information, LLC ("JHI") and Jeff Levitz ("Levitz") for summary judgment against Plaintiff Annavil Siroy ("Siroy") pursuant to Federal Rule of Civil Procedure 56. (Motion for Summary Judgment, ECF No. 28). In this diversity action, Siroy brings employment claims of discrimination, hostile work environment, and retaliation in violation of the New York State Human Rights Law (New York State Executive Law § 296) ("NYSHRL") and New York City Human Rights Law (New York City Administrative Code § 8-107) ("NYCHRL"). The Court declined to hear oral argument pursuant to Federal Rule of Civil Procedure 78, and for the reasons set forth below, Defendants' Motion for Summary Judgment is **GRANTED**.

**FACTUAL AND PROCEDURAL HISTORY**

        JHI is a Delaware limited liability company with its principal place of business in the state of New York that provides national health information and marketing services. (Complaint ("Compl.") ¶¶ 6-8 (ECF No. 1, Exh. A)). Levitz is a resident of the state of Georgia and an employee of JHI as Senior Vice President of Operations. (Compl. ¶¶ 10-12).

        Siroy is a Filipino-American female who resides in Hudson County, New Jersey. (Compl. ¶ 5). On April 1, 2012, Siroy commenced employment with JHI, earning a base salary of $75,000 a year as an Email Marketing Manager under the supervision of Levitz. (Compl. ¶¶ 14-15, 19; Employment Agreement ¶ 5 (ECF No. 28-3, Exh. W)).

**A. Discrimination and Hostile Work Environment**

Siroy alleges that as a result of her race and gender she faced discrimination at work that led to a hostile work environment. Specifically, she alleges that she: (1) was not promoted (Compl. ¶ 30); (2) was excluded from company-wide salary increases (*Id.* ¶ 31); (3) was required to manage an excessive workload (*Id.* ¶ 39); (4) did not receive proper training (Plaintiff's Deposition Transcript ("Pl. Dep.") at 217 (ECF No. 28-4, Exh. Y)); (5) did not receive a stipend for the work she put in overtime (*Id.* at 214); and (6) was reassigned to a cubicle away from the window, a cubicle that was then given to a more recently employed white female (*Id.* at 100-102). Siroy further claims that this discriminatory behavior created a hostile work environment, in which she suffered emotional distress from feeling humiliated, degraded, belittled, embarrassed, and victimized, ultimately leading to her constructive discharge in April 2015. (Compl. ¶¶ 59, 72-74).

*1. Failure to Promote*

Siroy claims that JHI failed to promote her during her almost three years at the company because of her race and gender. (Compl. ¶ 30). In her Complaint, Siroy asserts that white male employees at JHI were promoted after a similar duration of employment: Dmitri Veinberg was promoted within twenty months of commencing his employment; Thomas Laauwe was promoted in less than three years; Bruce Birtwell was promoted in one year; and Joshua Wasserman, who was hired at the same time as Siroy, was promoted during Siroy's employment at JHI. (Compl. ¶¶ 34, 36, 43-45). Siroy testified that she was unaware of available promotions, and thus never applied for one. (Pl. Dep. at 130). Still, Siroy's expectation was that if she "demonstrated [her] skill set and [she] showed [her] ability to help all different departments," she would be considered for a promotion, which she claims she was not. (Pl. Dep. at 129).

Defendants JHI and Levitz offered Siroy the new position of Digital Marketing Manager, a position that was allegedly created specifically for her as a way to address the concerns she raised about her workload. (Declaration of Jeff Levitz ("Levitz Decl.") ¶¶ 56 (ECF No. 28-2); Pl. Dep. at 327). Levitz maintains that Digital Marketing Manager was a more senior position to her currently held position that also offered her more money. (Levitz Decl. ¶¶ 56-61). However, Siroy testified that she felt this was a bilateral move that did not offer room for growth and ultimately declined the offer. (Pl. Dep. at 325-26).

2. *Companywide Salary Increases*

Siroy alleges that she was not provided with salary increases "when compared with other similarly situated employees because of her race and gender." (Compl. ¶ 31; Pl. Dep. at 272). Siroy further explained in her deposition testimony that the employees she was referring to were "Dmitri Veinberg and everyone else who got a salary increase companywide." (Pl. Dep. at 272). Beyond this claim, Siroy admits in her testimony that she does not know for certain whether Veinberg or anyone else actually received a companywide increase, nor does she proffer any evidence to support her assertions that these increases occurred. (Pl. Dep. at 272). The only evidence offered by Siroy to show that the increases occurred is her testimony that an email sent to employees announced a companywide salary increase for employees who met certain criteria: 1) the employee did not receive a promotion; 2) the employee is not on a commission plan; and 3) the employee was employed for a specific time range. (Pl. Dep. at 186).

Siroy's employment agreement with JHI provided for yearly salary increases, which she did receive, but she claims that despite meeting all the criteria in the email, she was excluded from two company-wide increases. (Employment Agreement ¶ 5 (ECF No. 28-3; Exh. W); Pl. Dep. at 168-69; 185-87)). Siroy maintains that the companywide salary increases and the increases provided by her employment agreement are separate and that nothing in the agreement precludes her from receiving the additional companywide salary increase. (*Id.* at 187). According to JHI's CEO, Jeff MacDonald, JHI did not provide salary increases to any employee receiving salary increases pursuant to an employment agreement. (Declaration of Jeff MacDonald ("MacDonald Decl.") ¶ 21 (ECF No. 28-3)).

3. *Excessive Workload*

In her Complaint, Siroy claims that she was "overloaded with work," generating client reports by manual data entry. (Compl. ¶ 39). The manual process was apparently so onerous that it would take Siroy multiple days to complete. (*Id.*). Beginning in October 2014, Siroy and Levitz exchanged emails about managing her workload. (Levitz Decl. ¶ 50; Exh. J (ECF No. 28-2)). Defendants allegedly responded by creating the new position of Digital Marketing Manager, which Siroy declined. Levitz continued to speak to Siroy into January 2015 about managing and reducing her workload and started looking to bring on a new staff member that could assume Siroy's responsibilities of manually generating client reports. (Levitz Decl. ¶ 67-69). This position was eventually filled in March 2015. (Levitz Decl. ¶ 70).

As further evidence of discrimination, Siroy also asserts that the manual reporting could have been automated, but Dmitri Veinberg refused to create an automated program, and Levitz permitted him to do so. (Compl. ¶ 38-39). Siroy further testified that Levitz would assign her the work that Veinberg declined to work on. (Pl. Dep. at 144).

*4. Failure to Train*

Siroy testified in her deposition that she did not receive training to handle personally identifying information, which by the end of her time at JHI, was about 80% of her workload. (Pl. Dep. at 225). Siroy claims a pattern of providing training in a discriminatory manner and identifies other minority employees who did not receive training, while white employees did. (*Id.* at 169, 216-17, 225). According to Levitz, JHI provides training to all employees that request it on personally identifying information. (Levitz Decl. ¶ 91). Siroy admits she never asked for such training. (Plaintiff's Responsive Statement of Material Facts in Opposition to Defendants' Rule 56.1(a) Statement ("Pl. SMF") at 164 (ECF No. 32-5)).

*5. Stipend/Overtime*

Siroy also claims that she did not receive any overtime or stipend when asked to perform additional work, while white male and female employees did. Siroy identified another minority female who she believes was also denied overtime. (Pl. Dep. at 216). Levitz explained in his Declaration that JHI had a policy of providing stipends to employees whose job duties included deployment of marketing emails and required them to be "on call" after 5:00 P.M. to handle emergency issues. (Levitz Decl. ¶ 83-86). Levitz claims that only this limited group of employees who was entitled based on this criterion was given stipends and that the other minority female that Siroy identifies did not meet these criteria. (*Id.* ¶ 88). Siroy testified that while she did perform work after 5:00 P.M., she did not have to respond to clients after that time. (Pl. Dep. at 106).

*6. Reassignment of Cubicle*

Finally, Siroy alleges that JHI reassigned her cubicle away from a window and gave her old window cubicle to a newly hired white female despite Siroy's seniority. (Pl. Dep. at 100-102). Siroy also claimed that other employees who belonged to protected classes were also moved away from the window. (Pl. Dep. at 102-103). While Siroy admits that there is no written policy concerning who receives a cubicle at a window with a view, Siroy testified that there was a "company culture" that effectively adopted this policy. (*Id.*). Levitz claims that JHI moved the location of Siroy's cubicle, along with the cubicle of a white male, away from a window with a

4

view because JHI's Alert Marketing Department production group grew and JHI wanted to organize the production employees' work spaces into one area of the office. (Levitz Decl. ¶ 90).

### B. Retaliation

On January 12, 2015, Siroy filed her first formal internal complaint of discrimination. (Internal Complaint at 2 (ECF No. 28-2, Exh. T)). Then on February 11, 2015, Siroy filed a complaint with the EEOC. (EEOC Charge of Discrimination (ECF No. 28-4, Exh. BB)). After the filings, Siroy claims that she began to experience retaliation by the Defendants, which ultimately resulted in her constructive termination on April 1, 2015. (Compl. ¶ 56, 59; Letter of Resignation (ECF No. 28-2 Exh. U)). Specifically, Siroy claims that (i) her workload increased; (ii) she was wrongly accused of insubordination; (iii) she was excluded from team meetings beginning in early 2015; (iv) her non-compete agreement with JHI was enforced against her when she applied for a job at WebMD Health Corp., while similar non-competes were not enforced against other employees.

*1. Increased Workload*

In her Complaint, Siroy alleges that her workload increased as a result of her filing formal complaints of discrimination. (Compl. ¶ 58). She does not quantify or explain in any other way how it increased in her Complaint, but in her deposition, Siroy testifies that after January 2015, more reports were needed from her. (Pl. Dep. at 348). She says this is because more requests, which are client driven, came in. (*Id.*).

*2. Accusation of Insubordination*

Siroy also claims that she was accused of insubordination by Levitz after she submitted her first formal internal complaint of discrimination on January 12, 2015. (Internal Complaint at 3). The accusation was sent in an email to Siroy on January 11, 2015. (*Id.*). Levitz was allegedly responding to a miscommunication between Siroy and another employee, in which Siroy seemingly refused to do a work assignment. (Pl. Dep. at 238-39).

*3. Exclusion from Team Meetings*

After she filed a Charge of Discrimination with the EEOC, Siroy alleges that she began to be excluded from team meetings. (Pl. Dep. at 349-50). These team meetings were allegedly with the circulation team, which she was not a part of but with which she would sometimes assist and attend meetings. (*Id.* at 50). However, according to Siroy, once she made her complaint of discrimination, she was no longer invited to those team meetings. (*Id.*). She was unable to say

what the substance of the circulation team meetings were that she was excluded from or whether they had anything to do with her job duties, responsibilities, or previous times of assistance such that she would have been invited were it not for her complaints. (*Id.*).

  *4. Non-Compete Clause*

Siroy's Employment Agreement included a non-compete clause, which Siroy claims was enforced after her employment with JHI concluded because of her complaints of discrimination. On or around March 12, 2015, Siroy applied for a position with WebMD. (Pl. SMF ¶ 179). On May 20, 2015, WebMD requested to review a copy of Siroy's Employment Agreement with JHI before it extended to Siroy an offer of employment as a manager of Product Marketing Operations & Analytics of WebMD's Medscape business. (*Id.* ¶¶ 190, 193). WebMD then gave Siroy a waiver to provide JHI, which requested that JHI waive the Employment Agreement's restrictive covenant against competition. (*Id.* ¶ 192). On May 26, 2015, Siroy submitted the waiver request to JHI, and on May 27, 2015, JHI sent Siroy an email informing her that it would not enter into such a waiver with respect to the position offered by WebMD. (*Id.* ¶¶ 194, 195).

According to Jeff MacDonald, he is the one who determines on a case by case basis the enforcement of restrictive covenants. (*Id.* ¶ 201). Siroy claims that JHI did not enforce its non-compete agreements with five other employees. (*Id.* ¶ 203). However, Siroy also admits that for one of the named individuals, JHI filed a lawsuit against her to enforce the non-compete agreement, and that for three others, Siroy has no personal knowledge whether JHI executed a non-compete agreement with them. (*Id.* ¶¶ 205, 211, 214, 216). Siroy submits no other evidence that these five individuals did not have their non-compete agreements enforced against them. Siroy also identifies another female whose non-compete agreement was not enforced and was allowed to work at WebMD. (*Id.* ¶ 218). However, she concedes that this female also engaged in the same kind of protected activity by complaining of discrimination. (*Id.* ¶ 220).

On September 23, 2015, Siroy received an offer of employment from Teradata Corporation to work as a Solution Consultant and began her employment in October 2015. (*Id.* ¶¶ 223-24).

  **C. Procedural History**

On June 9, 2016, Siroy filed a complaint in the Superior Court of the State of New Jersey, Hudson County, bringing claims for discrimination, hostile work environment, and retaliation

6

under the NYSHRL and NYCHRL. (Notice of Removal, Exh. A (ECF No.1)). Siroy seeks damages for "loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails," and for the "suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses." (Compl. ¶ 104). Siroy also seeks punitive damages and attorney's fees. (Compl. ¶¶ F-G).

JHI removed the case based on diversity jurisdiction pursuant to 28 U.S.C. § 1441(b) to the United States District Court for the District of New Jersey on July 25, 2016. (Notice of Removal (ECF No. 1)). Parties consented to this Court's jurisdiction on December 15, 2017. (Consent to Jurisdiction (ECF No. 25)). On July 27, 2018, Defendants JHI and Levitz filed the Motion for Summary Judgment presently before this Court. (Motion for Summary Judgment ("MSJ") (ECF No. 28)).

## JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 over an action based on diversity where the matter in controversy exceeds seventy-five thousand dollars ($75,000) and the action is between citizens of different states. Here, the parties are citizens of different states. However, the Complaint does not contain a specific monetary amount for damages.

The general federal rule instructs courts to decide the amount in controversy from the complaint itself. *Horton v. Liberty Mutual Ins. Co.*, 367 U.S. 348, 353 (1961). When the complaint does not contain a demand for a specific monetary amount, the court must perform an independent appraisal of the monetary value of the claim. *Avant v. J.C. Penney*, 2007 WL 1791621, *2 (D.N.J. June 19, 2007) (citing *Angus*, 989 F.2d at 146). The amount in controversy is measured by a "reasonable reading of the value of the rights being litigated." *Angus v. Shiley Inc.*, 989 F.2d 142, 146 (3d Cir. 1993). In its calculations, the Court must also consider attorney's fees and punitive damages, both of which Siroy seeks here. *Goralski v. Shared Techs, Inc.*, 2009 WL 2460752, *5 (D.N.J. Aug. 7, 2009) (citing *Golden v. Golden*, 382 F.3d 348, 355-56 (3d Cir. 2004); *Suber v. Chrysler Corp.*, 104 F.3d 578, 585 (3d Cir. 1997).

Although Siroy's Complaint does not contain a specific amount for damages sought, the damages she does allege as well as information given about her salary provide the Court with enough information to make a reasonable appraisal of the amount in controversy. Siroy alleges a loss of income and salary along with benefits and other compensation. (Compl. ¶ 104). Siroy's

7

salary per her Employment Agreement started at $75,000 with an annual increase by a minimum of 2% on January 1 of each subsequent calendar year through the end of her contract on March 31, 2015. (Employment Agreement ¶ 5). The Court finds that in light of these damage claims coupled with the other compensatory damages, punitive damages, and attorney's fees, a reasonable appraisal of the amount in controversy exceeds $75,000, thus this matter is properly before this court.

## STANDARD OF REVIEW

Summary judgment is appropriate under Fed. R. Civ. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inference are to be drawn in his favor." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). But a court does not have to adopt the version of facts asserted by the nonmoving party if those facts are "utterly discredited by the record [so] that no reasonable jury" could believe them. *Scott v. Harris*, 550 U.S. 373, 380 (2007).

The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial. *Beard v. Banks*, 548 U.S. 521, 529 (2006). Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248. The non-movant cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995). Unsupported allegations are "insufficient to repeal summary judgment." *Schnoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d. Cir. 1990). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the

burden of proof at trial . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Casualty & Surety Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23).

# DISCUSSION

## A. New York State Human Rights Law ("NYSHRL") Discrimination Claim

The standards for recovery for a race and gender discrimination claim under NYSHRL mirror the standards and burden-shifting structure of the federal framework under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *Ferrante v. American Lung Assn.*, 90 N.Y.2d 623, 629 (N.Y. 1997). To establish a *prima facie* case of discrimination under the NYSHRL, a plaintiff must demonstrate that (1) they are a member of the class protected by the statute; (2) they were actively or constructively discharged; (3) they were qualified to hold the position from which they were terminated; and (4) the discharge occurred under circumstances giving rise to an inference of discrimination. *Id.* (citing *McDonnell* at 802).

If the plaintiff presents a *prima facie* case, the burden of production then shifts to the defendant "to rebut the presumption of discrimination by clearly setting forth, through the introduction of admissible evidence, legitimate, independent, and nondiscriminatory reasons to support its employment decision." *Ferrante*, 90 N.Y.2d at 629 (citing *Matter of Miller Brewing Co. v. State of Div. of Human Rights*, 66 N.Y.2d 937, 938 (N.Y. 1985)). To succeed on the claim, the plaintiff must show that the "legitimate reasons proffered by the defendant were merely a pretext for discrimination by demonstrating both that the stated reasons were false and that discrimination was the real reason." *Forrest v. Jewish Guild for the Blind*, 819 N.E. 2d 998, 1007 (N.Y. 2004).

Siroy alleges that she was discriminated against in the following ways: she (i) was not promoted; (ii) was not provided with company-wide salary increases that were separate from the annual increases included in her Employment Agreement; (iii) was required to perform excessive work that she could not refuse despite the ability of other white men refusing to perform work; (iv) never received training on personally identifying information; (v) did not receive overtime or a stipend; and (vi) was forced to give her up her cubicle next to the window, a cubicle that was ultimately given to a newly employed white female.

9

Here, defendants do not dispute that Siroy is part of a protected class or that she was qualified for her position. (MSJ at 6). Instead, Defendants argue that the facts alleged by Siroy do not constitute an adverse employment action. Defendants contend that unlike termination, cuts in pay or benefits, or purportedly onerous work assignments are "minor changes that do not drastically alter the nature of her work." *Id.* The Court agrees.

An adverse employment action requires a "materially adverse change in the terms and conditions of employment." *Forrest*, 819 N.E. 2d at 1007. Possible indices of a materially adverse change include termination of employment, demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, and significantly diminished material responsibilities. *Id.* Although the burden of presenting a *prima facie* case is a minimal one, to be materially adverse, a change in working conditions must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* (citing *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)); *see also Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005) (noting that the burden of proof for a Title VII plaintiff to survive summary judgment at the *prima facie* stage has been characterized as "minimal" and "*de minimis*."). However, as explained above, the allegations presented by Siroy, even when taken as true, do not rise beyond the level required to constitute an adverse action as defined by law. Because Siroy has failed to allege any adverse employment action, no reasonable jury can find that Siroy has sufficiently plead a prima facie case of race and gender discrimination. Therefore, the Court grants summary judgments with respect to Siroy's NYSHRL discrimination claims.

   *1. Failure to Promote*

A failure to promote is a well-established material harm. *Moore v. Metropolitan Transp. Authority*, 999 F. Supp. 2d 482, 499 (S.D.N.Y. 2013) (stating that an employee must show a "material harm . . . such as a failure to promote or a loss of career advancement opportunities" to plead an adverse employment action under Title VII and the NYSHRL). Siroy alleges that she was not promoted despite other men in the company being promoted after similar lengths of employment. However, the record does not indicate that Siroy ever applied for a promotion or that promotions at JHI were automatic or available. Indeed, Siroy acknowledges that she never applied for a promotion because "there [were] none available." (Pl. Dep. at 130). Believing one deserves a promotion but not receiving it when there are none available or when not applied to does not constitute a failure to promote or an adverse employment action.

10

### 2. Excessive Workload

Excessive or unfavorable work assignments are not material adverse changes in terms and conditions of employment. *See Fridia v. Henderson,* 2000 WL 1772779, *7, (S.D.N.Y., Nov. 30, 2002) (finding that an allegation of excessive work does not constitute materially adverse changes in the terms, conditions, or privileges of employment); *Katz v. Beth Israel Med. Ctr.*, 2001 WL 11064, *14, (S.D.N.Y., Jan. 4, 2001) ("Being yelled at, receiving unfair criticism, receiving unfavorable schedules or work assignments . . . do not rise to the level of adverse employment actions.") Although receiving a "disproportionately heavy workload" can constitute an adverse employment action, the receipt of these assignments must be accompanied by a material detriment to an employee's working conditions. *See Grant v. N.Y. State Office for People with Developmental Disabilities*, 2013 WL 3973168, at *7 (E.D.N.Y. July 30, 2013) (dismissing complaint because "[t]he only adverse employment action that plaintiff alleges . . . was his assignment to more onerous work assignments" and allegations of "unfair work assignments, without more, do not amount to adverse employment actions because they are not materially adverse changes in the terms and conditions of the plaintiff's employment" (internal quotation marks and brackets omitted); *Hill v. Rayboy-Brauestein*, 476 F. Supp. 2d 336, 352 (S.D.N.Y. 2006) ("change in job responsibilities" and "underutilization of Plaintiff's skills" are not adverse employment actions unless "accompanied by materially adverse changes in employment, such as demotion or loss of wages").

Here, Siroy fails to allege beyond embarrassment and humiliation any material detriment to the terms and conditions of her employment that stemmed from the excessive work needed to generate client reports manually. Moreover, the record shows that Levitz sought to assist Siroy in managing her workload by offering Siroy a new position that would provide an increase in her salary and ultimately hiring additional staff to assist her. Siroy presents no evidence to show how this all resulted in a material detriment to her, thus failing to show an adverse employment action.

### 3. Companywide Salary Increases

Siroy alleges that she was excluded from two companywide salary increases without offering any evidence to support her belief that these companywide increases occurred, including the emails she allegedly received announcing the increases and criteria for receiving one. Furthermore, Siroy specifically testifies that she's uncertain whether anyone received the increase.

(Pl. Dep. at 272). Without evidence of an increase occurring, there are no facts for a jury to consider whether there was an adverse employment action.

### 4. Failure to Train

While denial of professional training opportunities may constitute an adverse employment action, the denial must result in a material harm such as a failure to promote or a loss of career advancement opportunities. *Moore*, 999 F. Supp. 2d at 499. Because Siroy has alleged no material harm and failed to show a failure to promote, Siroy's claim of denial of training also fails to constitute an adverse employment action.

### 5. Denial of Overtime

A denial of overtime does not necessarily constitute an adverse employment action under state discrimination law. Similar to a failure to train, an employee must establish that a material detriment resulted from the denial, such as opportunities for career advancement. *See Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 406 (S.D.N.Y. 2014) (holding that plaintiff's conclusory allegation that she was denied overtime, without more, was insufficient to substantiate an adverse employment action). Here, Siroy does not allege any material detriment from being denied overtime or stipend beyond her statement that she was entitled to it when she worked past 5 p.m. and did not receive it. Nor does she adequately allege with evidence that she should have received it. Consequently, the Court again finds no adverse employment action.

### 6. Reassignment of Cubicle

The relocation of cubicles or assigned work posts generally does not by itself constitute a materially adverse change in employment. *See Dowrich-Weeks v. Cooper Square Realty, Inc.*, 535 Fed. Appx. 9, 11-12 (2d Cir. 2013) (being moved from an office to a cubicle is not an adverse employment action under Title VII or NYSHRL)*; see also Gamble v. Chertoff*, 2006 WL 3794290, *5 (S.D.N.Y. Dec. 27, 2006) (explaining that even if plaintiff had been reassigned cubicles, it would not constitute a materially adverse change under Title VII absent evidence of an unfavorable change in circumstances) (citing *Galabya v. New York City Bd. Of Educ.*, 202 F.3d 636, 641 (2d Cir. 2000) (transfer [in assigned post] will be adverse only "if it results in a change in responsibilities so significant as to constitute a setback to the plaintiff's career"). Here, Siroy fails to allege any resulting harm to the terms and conditions of her employment and thus fails to show an adverse employment action.

### B. NYSHRL Hostile Work Environment Claim

Like the state discrimination claims, hostile work environment claims under the NYSHRL are generally governed by the same standards as federal claims under the Title VII. *Schiano v. Quality Payroll Systems, Inc.*, 445 F.3d 597, 609 (2d Cir. 2006). To establish a hostile work environment claim, a plaintiff must prove that the harassment was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002). In other words, the workplace must be so "severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered." *Id.* Breaking it down even further, the plaintiff must show that the complained of conduct: (1) is "objectively severe or pervasive – that is, creates an environment that a reasonable person would find hostile or abusive;' (2) creates an environment 'that the plaintiff subjectively perceives a hostile or abusive;' and (3) creates such an environment because of the plaintiff's sex." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (quoting *Gregory v. Daly*, 243 F.3d 687, 691-92 (2d Cir. 2001).

A work environment's hostility should be assessed based on the "totality of the circumstances." *Patane*, 508 F.3d at 113 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). Factors a court might consider when assessing the totality of the circumstances include: the frequency of the discriminatory conduct; its severity; whether it is threatening and humiliating or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Id.*

Siroy cites the conduct for her discrimination claim as the basis for her hostile work environment claim. But once again taking all of her allegations as true and drawing all reasonable inferences in Siroy's favor, the Court concludes that the incidents cited by Siroy, taken together, are insufficient to meet the threshold of a hostile work environment. Siroy's allegations of a hostile work environment are either conclusory, claim incidents that are unsupported by evidence, or are not sufficiently severe or pervasive enough to "transform [her] workplace" such that she can sustain a hostile work environment claim under state law. *See Alfano*, 294 F.3d at 374. Conduct must be "extreme to amount to a change in the terms and conditions of employment." (*Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999). All of the alleged conduct when taken together falls short of this standard.

In addition to severity and pervasiveness, Siroy would still need to show that the conduct occurred because of her race and sex. All of the incidents were facially sex and race neutral. Facially neutral incidents may be included in the "totality of circumstances" analysis as long as there is some circumstantial basis for inferring that facially discriminatory neutral incidents were actually discriminatory. *See Alfano*, 294 F.3d at 379. Here, Siroy offers no evidence for a reasonable fact finder to infer animus in any of the alleged incidents or that any alleged unfairness was motivated by her sex or race. The incidents do not justify inferring that they were part of a campaign to harass Siroy on the basis of her sex or race.

Considering this, the Court finds that the record falls short of showing an actionable claim of a hostile work environment under NYSHRL. In all, the conduct lacked any sexual or racial overtones, and the record lacked any inference of mistreatment let alone conduct that was indicative of sex or race based hostility. The Court finds that no reasonable fact finder could conclude that as a result of these alleged incidents, Siroy's workplace was "permeated with discriminatory intimidation, ridicule, and insult." *Alfano*, 294 F.3d at 380. Accordingly, the Court grants summary judgment with respect to Siroy's state hostile work environment claims.

### C. NYSHRL Retaliation Claim

Retaliation claims under the NYSHRL are analyzed under the *McDonnell Douglas* framework. *See Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013). Under this framework, the plaintiff must establish a prima facie case of retaliation by showing: (1) participation in a protected activity; (2) the defendant's awareness of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action. *Id.* at 844. When the plaintiff has established a prima facie showing of retaliation, then the burden shifts to the employer to "articulate some legitimate, non-retaliatory reason for the employment action." *Id.* at 845. After the defendants have articulated a legitimate, non-retaliatory reason for the employment action, the "plaintiff 'must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer' for his or her claim to survive." *Villar v. City of New York*, 135 F. Supp. 3d 105, 136 (S.D.N.Y. 2015) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013)). The Second Circuit has explained that but-for causation "does not require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Zann Kwan*, 737 F.3d at 846.

Siroy alleges that she was retaliated against in the following ways: (i) she was given an increased workload; (ii) she was wrongly accused of insubordination; (iii) she was excluded from team meetings in early 2015; and (iv) her non-compete agreement with Defendant JHI was enforced against her while similar non-competes were not enforced against other employees. (Compl. ¶¶ 56-60; Plaintiff's Opposition to MSJ ("Pl. Opp.") at 20). As with her state discrimination claims, none of the alleged retaliatory acts constitute an adverse employment action because none of them change the terms and conditions of the employment. Additionally, Siroy has failed to establish her prima facie case for retaliation because she has not established a causal connection between Siroy's protected activity of submitting formal complaints and the purported discriminatory treatment. While Siroy has proffered a list of alleged adverse actions, Siroy has not submitted into the record any direct evidence or circumstantial evidence of retaliatory animus against her by or on behalf of defendants such that she could satisfy the but-for causation standard.

Siroy alleges that because she complained of discriminatory conduct she was given an increased workload. Siroy maintains that she had an excessive workload even before she complained, but Siroy fails to identify how and when her workload increased such that a reasonable jury could find that the increased workload was tied to her complaint of discriminatory conduct. Moreover, even after Siroy filed both complaints, in March 2015, JHI still hired an additional staff member as promised to assist Siroy in the hopes that it would alleviate her workload. Without more than a conclusory statement that the increase in workload was because of her complaint, a trier of fact could not find in her favor.

Siroy also fails to show a causal connection between the alleged accusation of insubordination and her first complaint. The email Defendant Levitz sent to Siroy where he accuses her of insubordination was sent on January 11, 2015, a day before Siroy first complained on January 12, 2015. (Pl. SMF ¶ 122; Pl. Dep. at 242). Without further explanation, it's chronologically impossible that a reasonable jury could find that Siroy's complaint caused an accusation of insubordination that occurred the day prior.

With respect to Siroy's claim that she was excluded from meetings following her complaint, the Court fails to find anything in the record beyond conclusory statements made by Siroy that she was excluded from certain circulation team meetings, which she sometimes attended. Without more, such as information identifying the meetings from which she was excluded and whether these were meetings that she should have been attending a trier of fact could

not find that an adverse employment action occurred or that her exclusion was related to her complaint.

Finally, Siroy fails to show any disparate treatment with respect to the enforcement of non-compete clauses such that a trier of fact could find an adverse employment action or a causal connection. Siroy's only evidence that the enforcement of the non-compete clause stemmed from retaliatory animus is that only a littler more than five months passed between her first complaint and her request for a waiver. A causal connection may be established on the basis of temporal proximity, but the adverse action must be "very close" in time to the protected activity. *Clark Cty. Sch. Dist. v. Breeden*, 523 U.S. 268, 273 (2001).

There is no "bright line to define the outer limits beyond which a temporal relationship is too attenuated." *Summa v. Hofstra Univ.*, 708 F.3d 115, 128 (2d Cir. 2013). Courts in the Second Circuit appear to consistently find that any passage of time over two months falls outside of a causal relationship. *See Hussein v. Hotel Employees & Restaurant Union, Local 6*, 108 F. Supp. 2d 360, 367 (S.D.N.Y. 2000) (holding that more than two months "defeats any retaliatory nexus"); *Williams v. City of New York*, 2012 WL 3245448, *11 (S.D.N.Y. Aug. 8, 2012) ("The passage of even two or three months is sufficient to negate any inference of causation when no other basis to infer retaliation is alleged); *see also Clark County School Dist. v. Breeden*, 523 U.S. 268, 273 (2001) (citing with approval cases holding three and four month gaps between protected activity and adverse action to be insufficient to establish a causal connection). Here, it was not until May 26, 2015, more than five months after Siroy first complained and four months after the filing of her EEOC complaint, that Siroy contacted JHI requesting a waiver of the restrictive covenant. (MacDonald Decl. ¶ 23; Exh. X).

However, Siroy correctly points out at least a handful of courts in the Second Circuit have found a causal nexus beyond that marker. (Pl. Opp. at 19 (citing *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 105-106 (2d Cir. 2010) (noting that the Second Circuit has held at least once before that five months is not too long to find the causal relationship)). Nevertheless, temporal proximity is one the weaker pieces of circumstantial evidence to show retaliation. *See El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010) (find that while temporal proximity may give rise to an inference of retaliation for purposes of establishing a prima facie case, alone, it is insufficient to defeat a summary judgment motion at the pretext stage). The attenuated temporal relationship, the lack of any other evidence, the enforcement of other non-compete clauses against

those who engaged in similar protected activity, and the effort to respond to Siroy's complained of concerns leave the Court unpersuaded that a reasonable jury could find that Siroy's protected activity was a but-for cause of the alleged adverse action.

Because Siroy cannot sustain a prima facie case of retaliation under NYSHRL by showing an adverse employment action or a causal connection between the protected activity and the retaliatory and discriminatory conduct, the Court grants summary judgment with respect to Siroy's state retaliation claims.

### D. New York City Human Rights Law ("NYCHRL") Discrimination Claim

Claims brought under the NYCHRL are allowed more latitude than NYSHRL claims and require the court to conduct a liberal construction analysis in all circumstances even where state and federal civil rights laws have comparable language; consequently, the Court must conduct a separate analysis of Siroy's claims. *See* Local Law 85 (2005) ("Local Civil Rights Restoration Act of 2005") (amending New York City Administrative Code § 8-107(7) ("[T]he provisions of this [chap[ter] title shall be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws, including those laws with provision comparably-worded to provisions of this title, have been so construed."). State and federal laws are "construed too narrowly to ensure protection of the civil rights of all persons covered by the law," and thus must be interpreted "independently from similar or identical provisions of New York state or federal statutes." *Id.* Pursuant to this mandate, courts must construe the NYCHRL's provision "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Albunio v. City of New York*, 16 N.Y.3d 472, 477-78, 922 N.Y.S.2d 244, 947 N.E.2d 135 (2011).

Despite NYCHRL's requirement for liberal construction, summary judgment can still be an appropriate mechanism for resolving such claims. *Mihalik v. Credit Agricole Cheuvreux*, 715 F.3d 102, 111 (2d Cir. 2013). Indeed, New York courts continue to grant and affirm the granting of summary judgment dismissing NYCHRL claims despite its broader latitude for relief. *See Melman v. Montefiore Med. Ctr.*, 946 N.Y.S. 2d 27, (N.Y. App. Div 2012) ("[E]ven after the passage of the [Restoration Act], not every plaintiff asserting a discrimination claim will be entitled to reach a jury. . . ."); *Bennett v. Health Management Systems, Inc.*, 936 N.Y.S.2d 112, 123-25 (N.Y. App. Div. 2011) (affirming grant of summary judgment); *Williams v. N.Y. City Hous. Auth.*,

61 A.D.3d 62 (1st Dep't 2009) (affirming grant of summary judgment). Similarly, the Court finds summary judgment appropriate here.

Unlike the adverse employment action requirement under state law, to survive a summary judgment motion, under the New York City law a plaintiff need only show that her employer treated her less well, but a plaintiff still must show that this treatment was at least in part because of or for a discriminatory reason. *Zambrano-Lamhaouhi v. New York City Bd. of Educ.*, 866 F. Supp. 2d 147, 160 (citing *Williams*, 61 A.D. 3d at 78; *Kerman-Mastour v. Financial Indus. Regulatory Auth., Inc.*, 814 F. Supp. 2d 355, 365-66 (S.D.N.Y. September 30, 2011). If a plaintiff can establish a prima facie case of discrimination under NYCHRL, the burden shifts to the defendant to present evidence of its legitimate, non-discriminatory motives to show the conduct was not caused by discrimination. *Mihalik*, 715 F.3d at 110 n. 8. The defendant is entitled to summary judgment on this basis "only if the record established as a matter of law that discrimination played no role in its actions." *Id.*

While the NYCHRL requires construing its provisions broadly in favor of the plaintiff, the plaintiff still must meet its prima facie burden of showing evidence beyond conclusory statements that she was treated less well because of her race and gender. Even if the Court were to accept that Siroy's allegations show that she was treated less well, Siroy has failed to produce a record that the treatment she alleges was because of her race and gender. As a matter of law, Siroy's evidentiary failures are fatal to establishing a prima facie claim, and thus the Court grants summary judgments with respect to Siroy's city discrimination claim. For the foregoing reasons, Siroy has not carried her prima facie burden. Accordingly, summary judgment is granted with respect to the city discrimination claims.

### E. NYCHRL Hostile Work Environment Claim

Under the NYCHRL, a plaintiff need not establish that the conduct was severe or pervasive to establish a claim. A conduct's severity or pervasiveness is only relevant to the issue of damages. Again, a plaintiff must only show differential treatment – that she was treated "less well than other employees" because of her race or gender. *Williams*, 61 A.D. 3d at 78.

That being said, the City HRL is not intended to operate as a "general civility code," and the plaintiff still bears the burden of showing that the conduct is caused by a discriminatory motive. *Id.* at 79. To achieve that balance between vindicating civil rights and avoiding truly insubstantial cases, defendants are offered an affirmative defense whereby defendants can still move for

summary judgments in instances where they can prove that the alleged discriminatory conduct is nothing more than "petty slights and trivial inconveniences." *Williams*, 61 A.D. 3d at *79-80.* In such "truly insubstantial" cases, summary judgment may be appropriate. *Id.* at 41.

Siroy's city hostile work environment claim must suffer the same fate as her other claims. Without a record showing that differential treatment occurred because of illegal motivations and that that treatment was more than just mere inconvenience, this Court must grant summary judgment on Siroy's NYCHRL hostile work environment claims.

### F.  NYCHRL Retaliation Claim

The standard for a claim of retaliation under the NYCHRL is also broader than its federal and state counterparts. Plaintiff need not establish that she suffered an "ultimate action with respect to employment . . . or [ ] a materially adverse change in the terms and conditions of employment" as a result of engaging in protected activity; retaliation "in any manner" is prohibited. N.Y.C. Admin. Code § 8-107(7); *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720, 723 (2d Cir. 2010) (quoting *Williams*, 872 N.Y.S.2d at 34). The plaintiff must "show that she took an action opposing her employer's discrimination and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Albunio*, 16 N.Y.3d at 479.  Summary judgment is appropriate in this context if "the plaintiff fails to prove that the conduct is caused at least in part by . . . retaliatory motives." *Mihalik*, 715 F.3d at 113.

Even under the more lenient NYCHRL standards, the Court concludes that there is no genuine dispute about the alleged retaliatory conduct. The Court echoes its decision and analysis under the NYSHRL that Siroy failed to meet her burden under Rule 56 of showing a retaliatory or discriminatory motive, and thus no jury could find, based on the submitted evidence that the alleged conduct was caused even partly by retaliatory motives. *See Williams*, 872 N.Y.S. 2d at 31). Accordingly, this Court grants summary judgment with respect to Siroy's city retaliation claims.

### CONCLUSION

Plaintiff Siroy has failed to make a prima facie case of discrimination, hostile work environment, and retaliation under New York's state and city laws. Thus, Defendants' Motion for Summary Judgement is granted. Accordingly, it is on this 15th day of April 2019,

**ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 28) is **GRANTED**.

**ORDERED** that the Clerk shall terminate ECF No. 28.

  *s/Cathy L. Waldor*
**CATHY L. WALDOR**
**United States Magistrate Judge**